UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

99 SEP 15 PM 2:2[?]

N.D. OF ALABAMA

| | |
|---|---|
| MITCHELL D. LOVE, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 98-S-0159-NE |
| J. TYLER RODEN, individually and in his official capacity as Sheriff of Cullman County, Alabama, | ) |
| Defendant. | ) |

**ENTERED**
SEP 15 1999

## MEMORANDUM OPINION

Plaintiff commenced this action on January 23, 1998, alleging his termination from the Cullman County Sheriff's Department constituted breach of contract, violated his Fourteenth Amendment due process rights, and violated his rights under 42 U.S.C. § 1983.[1]  (Amended & Restated Complaint ¶¶ 19, 23.)  He contends defendant, the Sheriff of Cullman County, breached plaintiff's employment contract by failing to follow certain disciplinary steps

---

[1] The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law ...."  U.S. Const. amend. XIV.  Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.



before discharging him. (*Id.* ¶ 23.) According to plaintiff, this breach of contract deprived him of certain due process rights. (*Id.* ¶ 19.) Plaintiff seeks reinstatement, compensatory damages, liquidated damages, lost seniority benefits, lost pension and fringe benefit credits, punitive damages, injunctive and declaratory relief, and attorney's fees and expenses. (*Id.* ¶ 27.)

Specifically, plaintiff argues defendant failed to follow certain guidelines in the Cullman County Sheriff's Department Policies and Procedures Manual (the "Manual") and the Cullman County Personnel Handbook (the "Handbook"). (*Id.* ¶ 22; Love depo. at 116.) In a previous memorandum opinion, this court ruled that deputy sheriffs are state employees who "cannot claim the Cullman County Personnel Handbook create[s] an employment contract with the county." (Opinion entered June 12, 1998 (Doc. No. 14), at 18 (emphasis supplied).)

In that opinion, the court did not address whether the Manual, which incorporates certain Handbook provisions, creates an employment contract between plaintiff and defendant, either individually or in his official capacity as Sheriff of Cullman County. The action presently is before this court on defendant's motion for summary judgment. Defendant argues plaintiff had no

2

protected property interest in his employment through application of the Manual and the Handbook. Since no protected property interest exists, he contends he did not breach any contract, and that plaintiff's constitutional and statutory claims are not actionable. Upon consideration of the motion, briefs, evidentiary submissions, and pleadings, the court agrees with defendant and concludes summary judgment is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant discharges this burden by showing the court there is an absence of evidence to support the non-movant's case.

3

*Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

4

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. See Augusta Iron & Steel Works v. Employers Insurance of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Jeffery, 64 F.3d at 594 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

## II. FACTS

Plaintiff was employed by the Cullman County Sheriff's Department from March, 1988, until January 24, 1996, the date of his discharge by defendant. He was a deputy sheriff at the time of

discharge.

Plaintiff's discharge was triggered by an incident at a Waffle House restaurant on January 15, 1996. He was eating with another deputy sheriff, Robert Schweighart, and a police officer from Good Hope, Alabama, Brian Goodwin. (Love depo. at 129-30.) During the meal, one of the waitresses asked the officers for assistance with another patron, who was "talking about having seizures." (Id. at 131-32.) When Officer Goodwin asked plaintiff what to do about the situation, he responded, "[G]o give him [the patron] a quarter and tell him to call somebody who cares." (Id. at 133.) Eventually, an ambulance took the patron to a hospital. (Id. at 134.)

Based on these events, a Waffle House employee filed a complaint with defendant.[2] (Roden depo. at 68.) Defendant ordered Arrington to obtain statements from plaintiff,[3] Schweighart,

---

[2] The Waffle House manager called either Lieutenant Arrington or Chief Deputy Waldrop of the Cullman County Sheriff's Department and filed a complaint. (Roden depo. at 68.)

[3] Love's statement noted:

On 01-15-96 myself and Sgt. Robert Schweighart met at the Waffle House in Good Hope for Breakfast between 12:30 a.m. and 1:00 a.m. Good Hope Officer Brian Goodwin also joined us. While we were eating the waitress advised us that a W/M subject sitting in a nearby booth was requesting to go to the hospital Complaining of Seizures. G.H.P.D. Officer Goodwin advised that they had dealt with the subject earlier and he was 10-96 and refused any assistance from them. The waitress also agreed that he was acting very strange. The waitress then left the table. Several minutes later the waitress returned and advised again that he wanted to go to the hospital and inquired as to whether we could transport him. We advised her that it was against our policy to transport individuals

6

Goodwin, and the Waffle House employees. (*Id.* at 69, Exhibits 7-10.) On January 24, plaintiff met with defendant and Arrington.[4] (*Id.* at 75.) Prior to this meeting, defendant provided no notice to plaintiff that discipline would be forthcoming. (*Id.*) During the January 24 meeting, defendant terminated plaintiff, "considering the circumstances that took place at the Waffle House ... [and] his work history." (*Id.* at 76.) Defendant testified "it was in [the] best interest of the Sheriff's Office that his employment be terminated." (*Id.*)

Defendant's documented reasons for termination included "failure to help a citizen asking for assistance" and "making comments unbecoming of a law enforcement officer to the citizen asking for assistance."[5] (Roden depo., Exhibit 5.) Defendant factored plaintiff's "past work history" into his decision to dismiss for "improper conduct" and "unsatisfactory performance."[6]

---

      to the hospital. At this time Sgt. Schweighart advised her to call 911 for an ambulance. The 911 call was made and 10-52 arrived shortly thereafter and transported the subject to the E/R.

(*Id.*, Exhibit 10.)

    [4] It is unclear whether Roden spoke with Love at all before the January 24 meeting in reference to the Waffle House incident. (*Id.* at 73-74.)

    [5] Love also told one of the waitresses at the Waffle House that she may have to take the complaining patron home with her. (Love depo. at 132.)

    [6] Love's prior work history included the following: (1) extended probationary period due to attitude problems (Roden depo., Exhibit 2); (2) wrecking sheriff's vehicles in 1988 and 1989 (*Id.*); (3) receiving two suspensions without pay (*Id.*; Love depo. at 102-04, 173-77.); (4) improperly discharging a

7

(Roden depo. at 61, Exhibit 5.) Defendant demoted Schweighart for his participation in the incident.[7] (*Id.* at 72.)

Plaintiff appealed defendant's decision to the Cullman County Personnel Board and, ultimately, to the Cullman County Commission. (Love depo. at 148-49.) Each agency affirmed defendant's decision. (*Id.* at 150.)

### III. DISCUSSION

**A. Introduction**

"The Fourteenth Amendment protects against the government's deprivation of liberty or property without procedural due process. State law determines whether a public employee has a property interest in his or her job." *Warren v. Crawford*, 927 F.2d 559, 562 (11th Cir. 1991) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976)).

A protected property interest in employment arises when one has a "legitimate claim of entitlement to continued employment." *See id.* (citing *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709) If

---

firearm in the dispatcher's office (Love depo. at 173-74); and (5) transporting and handling an explosive device without proper training (*Id.* at 175-77.)

[7] Roden considered Schweighart's prior disciplinary history as well in determining appropriate punishment. (*Id.* at 93.)

8

provisions in the Manual and Handbook comprised an employment contract for a definite duration, then plaintiff could not be terminated without adherence to those provisions. Moreover, failure to follow these provisions potentially infringes upon plaintiff's Fourteenth Amendment due process rights and his rights under 42 U.S.C. § 1983. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) ("[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'") (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

Accordingly, this court must analyze the law of the State of Alabama to determine whether plaintiff held a property interest in continued employment. *See Nolin v. Douglas County*, 903 F.2d 1546, 1553 (11th Cir. 1990) (overruled on other grounds by *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994)). This requires application of the relevant case law to certain provisions in the Manual and Handbook. *See id.*

### B. Alabama Law on Employee Manuals/Handbooks as Contracts

In order to prove under the substantive law of the State of Alabama that an employment contract is not terminable at will,

plaintiff must show:

> (1) that there was a clear and unequivocal offer of lifetime employment or employment of definite duration, (2) that the hiring agent had authority to bind the principal to a permanent employment contract, and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered.

*Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 728 (Ala. 1987) (citations omitted). The Alabama Supreme Court clearly established in *Hoffman* that language in an employment handbook may be sufficient to create a binding contract. This holding creates an exception to Alabama's traditional support of the employment at will doctrine. The *Hoffman* court set forth a three prong test to determine when handbook language created such a contract:

> First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer.

*Id.* at 735, (cited with approval in *Lassiter v. Covington*, 861 F.2d 680, 684 (11th Cir. 1988)). The first prong of this test is the most heavily litigated.[8] The *Hoffman* court distinguished specific language in a handbook that creates a binding promise from "a mere

---

[8] Under the *Hoffman* test, "actual performance supplies the necessary consideration." *Id.*

10

general statement of policy." *Id.* at 734. It also noted that, "<u>if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook.</u>" *Id.* (emphasis supplied).

Since *Hoffman*, the Alabama Supreme Court has held on several occasions that handbooks with express disclaimers do not create binding contracts. *See Graham v. Community Action Agency of North Central Alabama, Inc.*, 702 So. 2d 1215, 1219 (Ala. 1997) (citing *Dykes v. Lane Trucking, Inc.*, 652 So. 2d 248, 249 (Ala. 1994) ("our employment 'at will' policy will remain in effect during the entire course of your employment"); *Abney v. Baptist Medical Centers*, 597 So. 2d 682, 682 (Ala. 1992) ("[a]ll employment is terminable with or without cause at the will of either the employee or the employer"); *Hanson v. New Technology, Inc.*, 594 So. 2d 96, 99 (Ala. 1992) ("[t]he policies described in this employee handbook are not conditions of employment and the language is not intended to create a contract"); *Clark v. America's First Credit Union*, 585 So. 2d 1367, 1369 ("this manual should not be construed to be a binding contract")). In *Abney*, 597 So. 2d at 682, defendant required employees, upon review of the handbook, to sign an acknowledgment that their employment was terminable at will.

11

On the other hand, handbooks lacking disclaimers that have detailed procedures regarding termination have been held to create binding contracts. See Graham, 702 So. 2d at 1219-21 ("[t]he Manual's provisions are devoid of disclaimers and ... are 'sufficiently clear and specific to constitute an offer of a unilateral contract' of employment") (citation omitted). Compare Mooney v. Harco Drug, Inc., 611 So. 2d 235, 237 (Ala. 1992) (handbook without grievance procedure or exhaustive list of disciplinary offenses is not "sufficiently clear and specific" under Hoffman test). In Mooney, the plaintiffs also alleged defendant's agent "represented ... that the employees would be terminated only because of dishonesty or rudeness to a customer." See id. at 235. Plaintiffs were terminated in an effort to cut expenses. See id. at 236. In analyzing the breach of contract claim, the Alabama Supreme Court focused entirely on the provisions in the employment handbook, not any representations allegedly made by defendant's agents. See id. at 237.

C. **Relevant Provisions of the Manual and the Handbook**

   1. **The Manual**

   Love stated the Manual in effect at the time of his

12

termination,[9] which incorporated the Handbook in part, provided him with an "expectation of employment." (Love depo. at 120.) This Manual states, in pertinent part:

> Employees should be aware of Alabama Act #79-574 which exempts the Cullman County Sheriff's Department from certain county personnel procedures. <u>Therefore, certain provisions exist in the Cullman County Personnel Handbook which do not apply to the Sheriff's Department</u>. Employees are encouraged to read and understand both manuals with the understanding that <u>applicable</u> county disciplinary provisions shall be incorporated within the disciplinary procedures utilized by the Sheriff's department.

(Manual at 17, § 37 (emphasis supplied).)

### 2. The Handbook

The Handbook states employees may only be removed for good cause. (Handbook at 1, § 1(B)(1).) An "[e]mployee" is "a person who regularly occupies a position in the <u>county</u> service, or a person who is on authorized leave of absence and whose position is being held for him/her pending his/her return." (*Id.* at 4, § 1(D)(6) (emphasis supplied).) In a section entitled "Categories of Service and Employment Status," the Handbook states "[t]he provisions of the Cullman County personnel system in no way apply to [elected officials of Cullman County], except as they apply to their relationship with covered employees." (*Id.* at 8, §

---

[9] At the time of his termination, the Manual of David Laney, who preceded defendant as Sheriff of Cullman County, was in effect. (Yarbrough Aff. at ¶ 4.)

13

4(A)(1)(a).) The sheriff is an elected official. (Roden depo. at 25.) Within this same section, the Handbook states:

> The sheriff will receive applications, set policies for hiring, promotion and <u>demotion</u> and <u>is not required to follow the policies and procedures established herein covering these specific areas</u>. In other areas, employees will be treated and receive benefits according to the county category they best fit.

(Handbook at 8, § IV(A)(2) (emphasis supplied).)

Sections IX and X of the Handbook concern disciplinary action and grievance procedures for county employees.[10]

---

[10] Employees enjoy numerous due process rights before and after termination. These rights include: (1) progressive discipline prior to dismissal for unacceptable job performance; (2) dismissal by a department head only with the Cullman County Commission's prior approval; and (3) fair, prompt, and consistent application of disciplinary action. (*Id.* at 31-39, §§ VII-IX.) If planned disciplinary action rises to the level of suspension without pay or termination, an employer must provide the following "before the effective date of the proposed action":

> The employee will be notified by his/her appointing authority in writing before the effective date of any proposed discipline: (1) the reason(s) for the proposed discipline; (2) the proposed disciplinary action to be taken and the effective date; (3) of his/her right to due process hearing; (4) of his/her right to appear in person at the hearing and/or to be represented by reasonable representation of his/her choice; (5) the date, time, and place of such hearing; (6) if possible, present a list of witnesses, if any, to appear and of his/her right to ask questions of such witnesses; (7) of his/her right to respond to the charges orally or in writing; and (8) of his her/right to call individuals to speak in his/her behalf.
>
> The employee will have three (3) working days in which to respond to this notice. If the employee fails to respond in writing to the notice, or if after holding such hearing the appointing authority decides to impose the proposed disciplinary action, the disciplinary action will be effective on the date specified.
>
> The employee notification and record of the hearing, to include the employee's response, will be incorporated into a report to the personnel clerk within five (5) days of the effective date of the

14

Both defendant and Ted Manies, a Cullman County deputy sheriff, stated the due process rights afforded to employees bound by the Handbook have no application to deputy sheriffs like plaintiff. According to the defendant:

> Earlier this year, I sought an Opinion from the Attorney General of the State of Alabama regarding whether or not the personnel handbook, policies, and procedures of the Cullman County Commission and the established personnel board had any authority over me and my deputies. ... [It states:]
>> Based upon the decision in *Whitten v. Lowe*, it is the opinion of this Office [that] a court would find that the deputy sheriffs of Cullman County are not county employees, and therefore, not subject to the Cullman County Personnel Board.

(Roden aff. at ¶ 5; Roden depo. at 38.) In his affidavit, Manies states:

> To the best of my knowledge, it has never been the practice or procedure of the Cullman County Sheriff to seek permission of the Cullman County Commission prior to disciplining officers. The Cullman County Personnel Handbook has never applied to disciplinary actions by the Cullman County Sheriff.

(Manies aff. at ¶ 4.)

---

disciplinary action. If the employee appeals the action to the personnel board, a copy of the report will be provided to the board.

(*Id.* at 40, § IX(D)(4)(a)-(c).) Once disciplinary action is taken, the Handbook provides for a three-step grievance procedure, which includes appeals to the Personnel Board and the Cullman County Commission. (See *id.* at 43-44, § X(B)(1)-(3).)

15

## D. Application

While section 37 of the Manual does not constitute an outright disclaimer like those set forth in *Dykes*, *Abney*, *Hanson*, and *Clark*, it puts deputy sheriffs like plaintiff on notice that the Manual only incorporates <u>applicable</u> Handbook provisions. This is in fact a clear disclaimer of any <u>wholesale</u> adoption of the Handbook.

Review of the Handbook in its entirety reveals that the established due process rights <u>do not apply</u> to deputy sheriffs. As stated in section IV(A)(2) (emphasis supplied), "The Sheriff will ... set policies for hiring, promotion and demotion and <u>is not required to follow the policies and procedures established herein</u> covering these specific areas." Further, in section IX(B), the Handbook guarantees due process to "[a]ll employees covered by the Cullman County Personnel System ... subject to the following types of disciplinary action [including dismissal] ...."

The logical conclusion to draw from this language is that the terms of the Handbook, specifically those outlined in sections IX and X, <u>apply only to county employees</u>. <u>A deputy sheriff is not a county employee</u>. *See Whitten v. Lowe*, 677 So. 2d 778, 780 (Ala. Civ. App. 1995) ("[W]e must conclude that a sheriff's deputy is also a state employee.") In light of *Lockridge v. Etowah County*

16

*Commission*, 460 So. 2d 1361 (Ala. Civ. App. 1984), it is very doubtful any county administrative agency, like the Personnel Board or Cullman County Commission, has authority to review a sheriff's decision to terminate a deputy sheriff:

> We are unable to find any authority, nor have we been cited any, for the Etowah County Commission to promulgate work rules for the employees of the sheriff's office, <u>especially the sheriff's deputies</u>. In the absence of such authority, we are constrained to hold that the Etowah County Commission has no power to grant leaves of absence to the sheriff's deputies. The sheriff is the only official who has such authority.

*Id.* at 1363 (emphasis supplied); *see also Terry v. Cook*, 866 F.2d 373, 379 (11th Cir. 1989) (county commissioners lack authority to hire or fire deputies).

This case is factually akin to the Eleventh Circuit's decision in *Warren v. Crawford*, 927 F.2d 559 (11th Cir. 1991), where that court held plaintiff, a road superintendent for Henry County, Georgia, failed to establish a protected property interest in his employment. The *Warren* court applied Georgia law to conclude plaintiff's personnel handbook did not create a contract of employment for a definite duration.[11] The *Warren* court emphasized

---

[11] *See id.* at 563-64. Certain dissimilarities in Georgia and Alabama contract law are irrelevant to the analysis here. *See Peterson v. Atlanta Housing Authority*, 998 F.2d 904, 913 n.18 (11th Cir. 1993) ("Moreover, to hold that the manual creates no contract for purposes of a breach of contract claim but may create a property interest for purposes of the constitutional claim raises the difficulty of circularity because her constitutional claim must have

17

plaintiff's superior was the County Administrator, who had discretionary authority to terminate employees. *See id.* at 562-63. The Eleventh Circuit concluded a distinction must be drawn between the plaintiff and other county employees:

> The district court observed that while the Personnel Handbook defined dismissal as "a separation for definable cause" it also stated that department heads may be removed by the County Administrator "when, in his [the Administrator's] judgment, it is in the best interest of the County." After reading the Personnel Handbook in its entirety, the court concluded that the Handbook was not intended to cover Warren's position as head of the DOT. ... The Handbook makes numerous distinctions between department heads [like plaintiff] and rank and file employees .... These distinctions support the conclusion that the Board intended to grant a property interest to rank and file employees but not to department heads when it passed the personnel ordinances which make up the Handbook.

*Id.* at 563.

Based on a review of relevant Alabama and Eleventh Circuit case law, this court concludes the due process rights set forth in the Handbook do not apply to plaintiff, and are not incorporated into the Manual, pursuant to the disclaimer in section 37. *See Hoffman*, 512 So. 2d at 734. Plaintiff lacks a contractual expectation of continued employment, and has no property interest

---

a basis in state law. However, we observe that termination cases involving constitutional claims are sui generis.") *Compare Garmon v. Health Group of Atlanta, Inc.*, 359 S.E.2d 450, 452 (Ga. Ct. App. 1987) (no cause of action for breach of contract, based on personnel manual, through wrongful termination), *with Hoffman*, 512 So. 2d at 728 (cause of action).

18

protected by the Fourteenth Amendment due process clause. *See Lassiter v. Alabama A&M University*, 28 F.3d 1146, 1151 (11th Cir. 1994) (contractual expectation of employment creates property interest). His due process claim,[12] and necessarily his claim under 42 U.S.C. § 1983, fails. *See Warren*, 927 F.2d at 564 (plaintiff's failure to prove a protected property interest means "his [constitutional, and therefore his section 1983] claims must fail").

## IV. CONCLUSION

Accordingly, defendant's motion is due to be granted. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 15th day of September, 1999.

United States District Judge

---

[12] Any claim by plaintiff that defendant's decision to discharge him violated his substantive due process rights fails in light of *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994):

> Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component. Because employment rights are state-created rights and are not "fundamental" rights created by the Constitution, they do not enjoy substantive due process protection.

*Id.* at 1559.